Philip D. Dracht (SBN 219044)
FABIAN VANCOTT
15 W. Carrillo St.
Santa Barbara, CA 93101
Tele: (801) 531-8900
pdracht@fabianvancott.com

Tanner J. Bean (pro hac vice)
FABIAN VANCOTT
95 S. State St Suite 2300
Salt Lake City, UT 84111
Tele: (801) 531-8900
tbean@fabianvancott.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ESCOBEDO, Plaintiff, <br><br> v. <br><br> GODFREY TRUCKING, INC.; SCOTT GODFREY; and DOES 1-100, inclusive, Defendants. | Case No.: 5:26-cv-929 <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(6)** <br><br> Complaint Served: January 27, 2026 <br> Complaint Amended: February 5, 2026 <br> Complaint Removed to Federal Court: February 26, 2026 <br> Trial Date: None Set <br> Hearing Date: April 27, 2026 at 9:00 a.m. |

-i-
REPLY ISO MOTION TO DISMISS

# MEMORANDUM

## I.    INTRODUCTION

Jorge Escobedo worked as a truck driver for Godfrey Trucking for about four years. He resigned once over assignment disputes, was rehired under an express condition that he "work and communicate with" his dispatcher Alex Pereira, and then spent the next two years clashing with Pereira about assignments, schedules, loads, and threatening to take another one of his "many job offers." On December 21, 2023, Escobedo refused a load, got into a shouting match with Pereira, and told the company he was done for the day. The owner called to press him to finish the work. The next morning, Godfrey Trucking fired him, citing the parties' "inability to work together." Compl., ¶ 17.

The Complaint repackages that sequence as fourteen causes of action spanning age discrimination, disability discrimination, harassment, failure to accommodate, failure to engage in the interactive process, failure to prevent, wrongful termination, whistleblower retaliation, meal and rest break violations, overtime violations, IIED, waiting time penalties, a UCL claim, and a standalone overtime claim. The Opposition does not cure the deficiencies the Motion identified but confirms them.

Three things are worth noting at the outset. First, the Opposition never builds a bridge between Escobedo's age (or disability) and his termination. It points to a performance comment that never mentions age, a gout episode that predates the firing by twenty-one months, and a paragraph of pattern-and-practice allegations so devoid of detail that it could have been cut and pasted from any formulaic FEHA complaint. Second, the Opposition misreads key authorities, most significantly *Raines v. U.S. Healthworks Medical Group*, which it cites for a proposition the case does not support. Third, the Opposition leaves the Fourth and Fifth Causes of Action (failure to accommodate and failure to engage in the

interactive process) completely undefended. Those claims should be dismissed on that basis alone.

## II.    THE AGE DISCRIMINATION CLAIM

### A.    The "Slowest Driver" Comment Is a Performance Review, Not a Slur.

The Opposition stakes much on Pereira's observation that Escobedo was "the slowest local driver." Opp'n, at 5–6. Read in isolation, the phrase sounds harsh. Read in context, as the Complaint itself supplies, it sounds like a supervisor writing a candid evaluation. Here is the full passage: "He is a challenge, I have complaints about him for sure. But he comes in every day, never has called in on me and for the most part reliable. He is very slow, the slowest local driver I have. But he has had a safe record and he gets us at least 2 loads per day." Compl., ¶ 13. That email praises Escobedo's attendance, reliability, and safety in the same breath as noting his pace, as a truck driver for which driving speed is a natural consideration of his job performance. It says nothing about age. Not a word, not a hint.

The Opposition's theory is that calling someone "slow" is a coded reference to age. But consider what that theory requires. Under the Opposition's logic, any supervisor who notes that an truck driver over 40 drives slowly has made a discriminatory comment, even if the supervisor is also over 40, even if the comment sits alongside praise, and even if the word "age" or "disability" never appears. That rule would convert routine performance feedback into litigation fodder. *Iqbal* demands more than a plaintiff's subjective belief that a neutral comment was really about a protected characteristic. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.      The Pattern-and-Practice Allegations Are Conclusions, Not Facts.**

The Opposition also relies on Paragraph 28 of the Complaint, which alleges that Defendants "discharged older employees with greater frequency than younger employees, hired fewer employees who were older than 40, and gave better jobs and benefits to younger employees." Opp'n, at 5–6. Not a single name. Not a single date. Not a single job title or position. The paragraph is a textbook "formulaic recitation of the elements" that *Iqbal* instructs courts to set aside. 556 U.S. at 678. The Opposition treats these bare conclusions as established facts.

Imagine a complaint alleging securities fraud that said only: "Defendant made material misstatements with greater frequency than truthful statements, concealed more information than it disclosed, and gave better information to insiders than to the public." No court would accept that as plausible pleading. The same principle applies here. *Twombly* requires factual content, not a formulaic version of a prima facie case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**C.      The Age Gap Supports Nothing.**

Pereira was approximately 40. Escobedo was 48. Both are in the protected class. The Opposition insists that whether Pereira harbored age-based animus is a "factual question for discovery and trial." Opp'n, at 7. Of course it is, if the Complaint first raises a plausible inference that such animus existed. But the question at the motion-to-dismiss stage is not whether discovery *might* turn up evidence of bias. It is whether the Complaint, as written, "states a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. An eight-year gap between two members of the same protected class, combined with a neutral performance comment and unsupported pattern allegations, does not cross that line.

**III.   THE DISABILITY CLAIMS**

The Opposition's best argument on disability is the March 2022 email in which Pereira documented Escobedo's gout to Human Resources. Opp'n, at 7–8.

But that email does not do the work the Opposition needs it to do. Knowing that an employee experienced a gout flare-up on a particular weekend is not the same as knowing that the employee has a qualifying disability within the meaning of FEHA. A qualifying disability must limit a major life activity. Gov. Code § 12102.1. The Complaint does not allege that the March 2022 gout episode was chronic, that it recurred, or that it limited a major life activity at or near the time of Escobedo's termination twenty-one months later. There is a difference between an employer knowing that an employee once had a sore foot and an employer knowing that the employee has an ongoing impairment requiring accommodation. The Opposition conflates the two.

The Opposition tries to bridge the gap with two later incidents: the September 2023 Ashley Furniture refusal and the December 2023 fatigue complaint. But neither allegation establishes that Defendants understood those refusals as disability related. The Complaint itself supplies Pereira's contemporaneous assessment: he was "unaware of any physical restrictions." Compl., ¶ 12. The Opposition characterizes this as potential "willful blindness" or a "litigation-crafted narrative." Opp'n, at 7. That characterization is possible. But *Iqbal* requires plausibility, not possibility. 556 U.S. at 678. Even drawing all reasonable inferences in Plaintiff's favor, the picture the Complaint paints does not make disability knowledge plausible. A gout episode twenty-one months before termination, two later load refusals more consistent with the well-documented personality conflict between Escobedo and Pereira, and a supervisor's contemporaneous statement disclaiming awareness of any physical restrictions do not, taken together, cross the line from conceivable to plausible.

*Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1248–49 (2008), which the Opposition invokes, allows imputed knowledge "when the fact of disability is the only reasonable interpretation of the known facts." That standard cuts against Plaintiff. The known facts include a driver who resigned once over

assignment disputes, clashed repeatedly with his supervisor over load assignments, threatened to resign again, refused multiple loads, and got into a shouting match the day before his termination. Disability is *one* possible interpretation of that pattern. It is not the only reasonable one.

The accommodation and interactive-process claims (Fourth and Fifth Causes of Action) face an additional problem. Even if the March 2022 gout email established knowledge of that condition, the duty to accommodate is triggered by knowledge of specific limitations requiring accommodation, not by general awareness that an employee once had a medical issue. *See Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009). The Complaint does not allege that Escobedo ever identified specific limitations, requested specific accommodations, or communicated that his condition required any change to the terms of his employment. And the Opposition devotes zero argument to these claims. That silence is itself a basis for dismissal.

## IV.    THE HARASSMENT CLAIM

*Reno v. Baird*, 18 Cal. 4th 640, 645–46 (1998), draws a line between harassment and personnel management. Harassment is conduct "outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Reno*, 18 Cal. 4th at 646. Personnel management is everything else: hiring, firing, assigning work, disciplining, criticizing performance. The distinction matters because FEHA treats the two differently: employers are strictly liable for supervisor harassment, but discriminatory personnel actions are evaluated under a different framework. *Id.* at 645–47.

Now put the Complaint's allegations through that filter. Pereira assigned loads. He pushed Escobedo to complete assignments. He sent an email evaluating Escobedo's productivity. When Escobedo refused a load, Pereira escalated the matter to Human Resources. And the company owner called to push that work get

done. Every single one of those acts is a personnel management decision. The Opposition cites *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708–09 (2009), for the proposition that personnel actions can support a harassment claim when layered into a broader pattern of discriminatory animus. Opp'n, at 9. But *Roby* involved a supervisor who openly mocked the plaintiff's disability, *see Roby*, 47 Cal. 4th at 709, not a supervisor who wrote a mixed review noting slow productivity. The Opposition never identifies the discriminatory animus that supposedly animates the personnel decisions here. It just assumes it.

## V. INDIVIDUAL LIABILITY

The Opposition's defense of individual liability against Scott Godfrey cites *Raines v. U.S. Healthworks Medical Group*, 28 F.4th 968 (9th Cir. 2022), but does not grapple with the distinction the Motion drew. The Motion explained that *Raines* addressed liability for business-entity agents, not individual corporate officers. The Opposition's response is to quote the holding, observe that it "leaves the question of the scope of agent liability open," Opp'n, at 10, and leave it at that. But the question is not open. The California Supreme Court answered the Ninth Circuit's certified question in *Raines v. U.S. Healthworks Medical Group*, 15 Cal. 5th 268 (2023), and took pains to reaffirm *Reno* and *Jones*. The court held that the policy concerns driving those decisions (the incongruity of holding individual non-employers liable while exempting small employers and the risk of chilling effects in the workplace) apply to individual agents, not to business entities. *Id.* at 276–81. Scott Godfrey is not a business-entity agent. He is a natural person and the company's owner. The very case the Opposition relies on confirms he cannot be held individually liable for FEHA discrimination or retaliation.

As for the wage-and-hour claims against Godfrey individually, the Opposition cites no authority. The Complaint does not allege that Scott Godfrey personally directed, controlled, or was responsible for any specific wage-and-hour violation. The only conduct attributed to him is a single phone call on December

21, 2023, pressing Escobedo to complete a load. That does not state a claim for individual wage-and-hour liability under any statute.

## VI.    FMCSA PREEMPTION

The Opposition argues that Defendants' acknowledgment that "the scope of FMCSA coverage may be further developed through discovery" is "dispositive." Opp'n, at 11. It is not. There is a difference between conceding that the precise boundaries of coverage might require factual development and conceding that coverage is an open question. The Complaint's own allegations establish the foundational predicates for FMCSA application: Escobedo worked as a "Local CA Driver" hauling loads between distribution facilities, operated commercial motor vehicles, and was subject to the federal fatigue regulation at 49 C.F.R. § 392.3 (which Plaintiff himself invokes to support the retaliation claim). Compl., ¶¶ 8, 15. More to the point, the Complaint references Escobedo's "legally permitted 11-hour driving window," Compl., ¶ 11, which is a reference to the specific FMCSA hours-of-service regulation at 49 C.F.R. § 395.3(a). That is the regulatory regime that triggers preemption under *Int'l Bhd. of Teamsters, Local 2785 v. FMCSA*, 986 F.3d 841, 847–54 (9th Cir. 2021). The Opposition never explains why the Complaint invokes a regulation that applies only to FMCSA-covered drivers if Plaintiff was not one.

The question is not *whether* Escobedo operated commercial vehicles subject to federal hours-of-service regulation. The Complaint assumes he did. The question is whether any specific exemption might apply to particular runs (although the Complaint makes no factual allegations to suggest one exists). That is a narrower inquiry than the Opposition suggests. At minimum, the Complaint's own regulatory citations create a strong presumption of FMCSA coverage and preemption that the Opposition has done nothing to rebut.

## VII.    THE OVERTIME CLAIMS FAIL UNDER *LANDERS*

The Opposition concedes that *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), requires "some factual specificity regarding workweeks in which overtime violations occurred." Opp'n, at 11. The Opposition then offers that Plaintiff worked 12 to 14 hours per day, was paid $27.50 per hour, and was never paid overtime. Which workweeks? The Opposition does not say. How many overtime hours? It does not say. What was the shortfall? It does not say. *Landers* requires that "a plaintiff asserting [overtime] claims must allege that she worked more than forty hours in a given workweek without being compensated." 771 F.3d at 645. General allegations about typical daily hours do not meet that standard.

The Opposition also raises, on its own initiative, IWC Wage Order No. 9, Section 3(L), which exempts California overtime requirements for drivers regulated by the U.S. Department of Transportation. Opp'n, at 11. The Opposition then argues the exemption "cannot be resolved at the pleading stage." Perhaps. But the Opposition's own acknowledgment of the exemption reinforces the FMCSA preemption argument: if Escobedo was subject to DOT regulation (as the Complaint's invocation of 49 C.F.R. § 392.3 suggests), the overtime claims fail independently under state law. The Opposition does not address the Motion's observation that the Complaint cites IWC Wage Order No. 5 (public housekeeping industry) rather than Wage Order No. 9 (transportation industry), which is the order applicable to Plaintiff's occupation.

## VIII.  IIED

The Opposition's defense of the IIED claim is circular. It argues that workers' compensation exclusivity does not apply because the underlying conduct violates FEHA. Opp'n, at 12–13 (citing *M.F. v. Pacific Pearl Hotel Mgmt. LLC*, 16 Cal. App. 5th 693, 700 (2017)). But that argument assumes the conclusion: if the FEHA claims are dismissed, the IIED claim loses its escape hatch from workers'

compensation preemption. The Opposition cannot bootstrap the IIED claim past the exclusivity bar by pointing to FEHA violations that have not survived scrutiny.

Even assuming the FEHA claims survive scrutiny, the IIED claim falls short. IIED requires conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community," and emotional distress so severe and enduring "that no reasonable person in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (citation modified). The Opposition characterizes the December 21 events as a company principal "personally demanding that a commercial driver violate safety rules." Opp'n, at 13. But the Complaint does not allege that Godfrey knew Escobedo was impaired, knew he had skipped a rest break, or intended him to break any law. It alleges that Godfrey called and said: "We need to get this stuff going." Compl., ¶ 15. A business owner pressing an employee to complete work is not outrageous. It is a Tuesday.

## IX.   THE DERIVATIVE CLAIMS

Three claims rise or fall with their predicates. The waiting time penalties claim under Labor Code § 203 survives only to the extent the underlying wage claims survive, and the Opposition's argument that the good-faith defense "cannot be decided at the pleading stage," Opp'n, at 13, does not cure the deficiencies in those predicate claims. The failure-to-prevent claim under Government Code § 12940(k), which the Opposition addresses in a single sentence, Opp'n, at 9, depends entirely on whether the underlying FEHA claims state viable causes of action. *See Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1314–15 (2015). If the FEHA claims fall, so does the duty to prevent.

The UCL claim fails for an independent reason. The Opposition defends it with two sentences asserting that Plaintiff suffered lost income. Opp'n, at 13. But the UCL only provides restitution and injunctive relief. To obtain injunctive relief in federal court, Plaintiff must demonstrate Article III standing, which requires a likelihood of future injury from the same conduct. A former employee of a

company where he no longer works faces no realistic threat of future harm from that employer's practices. The Opposition identifies no basis for prospective injunctive relief and no cognizable claim for restitution beyond what the other causes of action already seek.

## X. LEAVE TO AMEND

Defendants recognize that the Ninth Circuit's policy favors leave to amend. But the scope of any leave should be tailored to the nature of the deficiency. Where the legal bar is categorical, amendment is futile regardless of what facts Plaintiff might add. The claims against Scott Godfrey for FEHA discrimination and retaliation are barred as a matter of law under *Reno* and *Jones*. No repleading will change that. Those claims should be dismissed with prejudice.

For the remaining claims, Defendants do not oppose leave to amend. Defendants respectfully note, however, that the age discrimination and harassment claims face fundamental obstacles that additional factual detail is unlikely to overcome. The Complaint's own allegations describe conduct that is, on its face, personnel management directed at a driver with a documented history of workplace conflicts. If Plaintiff is granted leave to amend, the Court should require that any amended complaint identify the specific factual basis for each claim with the particularity *Iqbal*, *Twombly*, and *Landers* demand.

## XI. CONCLUSION

The Opposition recycles the Complaint's conclusory allegations, misapplies *Raines*, leaves two causes of action undefended, and never articulates a coherent theory connecting Plaintiff's age or disability to his termination. The claims that are before the Court in the Motion do not state plausible causes of action, and the fourteen-count complaint should be dismissed accordingly. The Court should grant the Motion.

///

///

REPLY ISO MOTION TO DISMISS

DATED: April 13, 2026

**FABIAN VANCOTT**

*/s/ Philip D. Dracht*
By: Philip D. Dracht
    Tanner J. Bean
Attorneys for Defendants,
GODFREY TRUCKING, INC. and
SCOTT GODFREY

REPLY ISO MOTION TO DISMISS