UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-929 JGB (ACCVx)** | Date | May 5, 2026 |
|---|---|---|---|
| Title | *Jorge Escobedo v. Godfrey Trucking, Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) GRANTING Defendants' Motion to Dismiss (Dkt. No. 11); and (2) VACATING the May 11, 2026 Hearing (IN CHAMBERS)**

Before the Court is Defendants Godfrey Trucking, Inc. and Scott Godfrey's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ("Motion," Dkt. No. 11.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matter, the Court **GRANTS** the Motion and **VACATES** the May 11, 2026 hearing.

## I.  BACKGROUND

On December 19, 2025, Plaintiff Jorge Escobedo ("Escobedo") filed a complaint against Defendants Godfrey Trucking, Inc. ("Godfrey Trucking") and Scott Godfrey ("Godfrey") in the Superior Court of the State of California for the County of San Bernardino. ("Complaint," Dkt. No. 1-1.) The Complaint alleges fourteen causes of action: (1) age discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) disability discrimination in violation of FEHA; (3) harassment on the basis of disability in violation of FEHA; (4) failure to provide reasonable accommodation in violation of FEHA; (5) failure to engage in the interactive process; (6) failure to prevent discrimination, harassment, and retaliation in violation of public policy; (7) wrongful termination; (8) violation of Labor Case § 1102.5; (9) failure to provide uninterrupted meal breaks; (10) failure to provide uninterrupted rest breaks; (11) intentional infliction of emotional distress; (12) failure to pay all wages due upon termination; (13) violation of Business and Professions Code § 17200 et seq.; and (14) failure to pay overtime compensation. (Id.)

On February 26, 2026, Defendants removed the action to this Court.  ("NOR," Dkt. No. 1.)  On March 29, 2026, Defendants filed the Motion.  Plaintiff opposed, and Defendants filed a reply.  ("Opposition," Dkt. No. 13; "Reply," Dkt. No. 14.)

## II.  FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

This case concerns Escobedo's termination from Godfrey Trucking.  Escobedo is a 48-year-old man who began working at Godfrey Trucking as a "Local CA Driver" on October 2, 2019.  (Compl. ¶ 8.)  Escobedo regularly worked between 12 and 14 hours per day.  (Id. ¶ 8.)  In October 2021, Escobedo resigned from his position after expressing concern about taking on an assignment issued by the dispatcher, Alex Pereira ("Pereira").  (Id.)  Escobedo was rehired in November 2021.  (Id.)  As part of his condition of employment, Escobedo agreed to "work and communicate with dispatcher/reporting supervisor [Pereira]."  (Id.)  Further, Escobedo would be required to run out-of-state loads.  (Id.)

In "mid-2022," Pereira, who had become Escobedo's direct supervisor, "harassed Escobedo regarding his occasional need for time off for medical appointments."  (Id. ¶ 10.)  At times, Pereira accused Escobedo of lying about his doctor appointments.  (Id.)  For example, in March 2022, Escobedo told Pereira he had gout and needed to miss work, and Pereira expressed disappointment in being down a driver.  (Id.)  After Escobedo called out, "Pereira persistently engaged in verbal disagreements with Escobedo and would raise his voice and yell at him over the phone."  (Id. ¶ 11.)  Escobedo complained to upper management, but "no corrective action was taken."  (Id.)  However, Pereira was talked to by management.  (Id.)

Starting in August 2023, Escobedo felt pressured by Pereira "to perform work assignments that were beyond the scope of his job, duties, and that Escobedo was physically unable to perform."  (Id. ¶ 12.)  Specifically, Escobedo could not help with "driver assist" jobs because he had a "pre-existing back condition."  (Id.)  In response to Escobedo's refusal to take on that assignment, Pereira send an email to CEO Godfrey: "Jorge is refusing to cover a local move I have booked for Ashley furniture tomorrow . . . Jorge does not have any physical restrictions that I am aware of . . . Jorge is flat refusing, saying that if he has to do any driver assist that he will QUIT and find another Job.  That he has received many job offers, and that he will just take one of those . . . Please add this to his driver file Kathy."  (Id.)  In a subsequent email, Pereira described Escobedo as a "challenge" and that although he has "complaints about him . . . he comes in every day . . . and for the most part [is] reliable."  (Id. ¶ 13.)  Pereria also mentioned Escobedo "is very slow, the slowest driver I have.  But he has had a safe record and he gets us at least 2 loads per day at the Andrus yard or the milk run which helps turn the OTR fleet quicker."  (Id.)

Throughout the fall of 2023, "Pereira would send text messages and call Escobedo, demanding that he skip his breaks in order to pick up additional loads and return to the yard more quickly." (Id. ¶ 14.)  On December 21, 2023, the situation reached a boiling point when Pereira pressured Escobedo to take another load, even though Escobedo felt fatigued and had not taken his lunch break.  (Id. ¶ 15.)  Escobedo denied the request and took the rest of the day off.  (Id.)  Godfrey then called Escobedo and left a voicemail stating the job needed to get done and that Pereira had informed him the two men had gotten into a screaming match.  (Id.)

The next day, on December 22, 2023, Godfrey, along with a human resources representative, called Escobedo to inform him that he was being terminated, effective immediately.  (Id. ¶ 16.)  The termination letter dated December 22, 2023, mentioned the recurring "workplace conflict" between Escobedo and Pereira.  (Id. ¶ 17.)

### III. LEGAL STANDARD

### A.  Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.  DISCUSSION

### A.  Claim One: FEHA Age Discrimination

With respect to age discrimination, Escobedo completely fails to allege sufficient facts to state a claim. FEHA prohibits employment discrimination based on protected characteristics, including age. Cal. Gov't Code § 12940(a). "[T]o make out a prima facie case of age discrimination under FEHA, a plaintiff must present evidence that the plaintiff (1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination, i.e., evidence that the plaintiff was replaced by someone significantly younger than the plaintiff." Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 321 (2010). "A plaintiff's burden in making a prima facie case of discrimination is not intended to be 'onerous.'" Id. (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Where the alleged adverse employment action is an employee's termination, the employee must establish that he was "replaced by a substantially younger employee with equal or inferior qualifications." Nidds v. Schindler Elevator Co., 113 F.3d 912, 917 (9th Cir. 1997) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994), as amended on denial of reh'g (July 14, 1994)).

Escobedo pleads nothing more than conclusory statements of law. (See Compl. ¶¶ 26–37.) In the Opposition, Escobedo states that the following facts "suggest[] a discriminatory motive based on age:" (1) Pereira is 40 years old, which is 8 years younger than Escobedo; (2) Escobedo experienced "hostile and abusive treatment from Pereira"; (3) Pereira described Escobedo as "the slowest local driver"; and (4) "defendants discharged older employees with greater frequency than younger employees, hired fewer employees who were older than 40, and gave better jobs and benefits to younger employees." (Opp'n at 6.) Contrary to Escobedo's assertion, these purported facts and conclusory statements are not enough to state a claim for age discrimination. To the extent Escobedo is claiming his termination was based on age, he must

plead facts that he was "replaced by a substantially younger employee with equal or inferior qualifications." Nidds, 113 F.3d at 917.  Therefore, Defendants' Motion as to Claim One is **GRANTED**, and the Claim is **DISMISSED WITH LEAVE TO AMEND**.

## B.  Claims Two, Three, Four, Five, and Six: Disability and FEHA-Related

Claims Two, Three, Four, and Five are based on Escobedo's alleged disability, which he conclusively states he "suffered from a disability and/or medical condition." (Compl. ¶ 7b.)  To plead disability discrimination, Escobedo must allege, "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of [his] disability . . . '" Faust v. California Portland Cement Co., 150 Cal. App. 4th 864, 886 (Cal. Ct. App. 2007).  Escobedo has alleged physical ailments, but has not alleged any specific disability or limitations imposed by his ailments.  See McKenna v. Permanente Med. Grp., Inc., 894 F. Supp. 2d 1258, 1278 (E.D. Cal. 2012) (finding dismissal appropriate where a plaintiff was "vague as to her alleged disability and fail[ed] to identify it precisely").  Escobedo has also failed to identify how any of the alleged adverse employment actions relate to his disability.  Therefore, Defendants' Motion as to Claims Two, Three, Four, and Five is **GRANTED**, and the Claims are **DISMISSED WITH LEAVE TO AMEND**.

Additionally,  given that Escobedo's Sixth Claim for failure to prevent discrimination, harassment, and retaliation in violation of FEHA is based on disability and age (see Compl. ¶ 66), this claim necessarily fails as Escobedo has failed to allege a FEHA claim on each basis.  Therefore, Defendants' Motion as to Claim Six is **GRANTED**, and the Claim is **DISMISSED WITH LEAVE TO AMEND**.

## C.  Claim Seven: Wrongful Termination in Violation of Public Policy

"Under California common law, although 'an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.'" Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 748 (9th Cir. 2011) (quoting Silo v. CHW Med. Found., 45 P.3d 1162, 1166 (Cal. 2002)).  This "public policy exception to the at-will employment rule must be based on policies carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." Silo, 45 P.3d at 1166 (internal quotation marks omitted).  "The elements for this tort are (1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination." Lucent Techs., Inc., 642 F.3d at 749.

Here, Escobedo's wrongful termination claim is derivative of his FEHA claims.  To the extent Escobedo's wrongful termination claim is based on theories of discrimination and harassment based on age or disability (see Compl. ¶ 74), the claim fails for the same reasons those underlying claims fail, as discussed above.  See, e.g., Horn v. Azusa Pac. Univ., 2019 WL 9044606, at *9 (C.D. Cal. Jan. 14, 2019).  Therefore, Defendants' Motion as to Claim Seven is **GRANTED**, and the Claim is **DISMISSED WITH LEAVE TO AMEND**.

### D. Claims Nine and Ten: FMCSA Preemption

Congress authorized the Federal Motor Carrier Safety Administration ("FMCSA") to determine whether its regulations preempt state laws and regulations governing "commercial motor vehicle safety." 49 U.S.C. § 31141. Section 31141(c) provides that a state may not enforce a state law or regulation on commercial motor vehicle safety which is additional to, or more stringent than, FMCSA safety regulations if: (1) the state law or regulation has no safety benefit; (2) the state law or regulation is "incompatible with the regulation prescribed by the Secretary; or (3) enforcement of the state law or regulation "would cause an unreasonable burden on interstate commerce." 49 U.S.C. § 31131(c)(4). "The Secretary need only find that one of the conditions set forth at paragraph (c)(4) exists to preempt the State provision(s) at issue." 83 Fed. Reg. 67470-71.

On December 28, 2018, the FMCSA, an agency of the United States Department of Transportation, published an order concluding that the state of California's meal and rest break rules, Cal. Labor Code §§ 226.7, 512, and 516 and Cal. Code Regs., tit. 9 §§ 11090(11)-(12) ("MRB Rules") are preempted by the FMCSA's Hours of Service Regulations ("HOS Regulations"), 49 C.F.R. § 395.3(a)(3)(ii), insofar as they are applied to property-carrying commercial vehicle drivers. 83 Fed. Reg. at 67471 ("2018 FMCSA Order"). This preemption was affirmed "as applied to operators of property-carrying motor vehicles subject to the federal hours-of-service regulations" by the Ninth Circuit in <u>Intl. Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Administration</u>, 986 F.3d 841, 846 (9th Cir. 2021).

As highlighted by Defendants, the Complaint invokes FMSCA's regulations, such as 49 C.F.R. § 392.3, which prohibits "ill or fatigued" operators from driving (<u>see</u> Compl. ¶¶ 8, 15), and 49 C.F.R. § 395.3(a), which, in part, governs total driving time for operators (<u>see</u> Compl. ¶ 11). Curiously, Plaintiff claims he suffered unlawful conduct under FMSCA's regulations in the Complaint, while arguing he is not subject to FMSCA's regulations in the Opposition. Based on allegations in the Complaint, Plaintiff is subject to FMSCA's regulations, and thus, his meal and rest break claims are preempted. Therefore, the Court **GRANTS** Defendants' Motion with respect to Claims Nine and Ten and **DENIES LEAVE TO AMEND**.

### E. Claim Eleven: IIED

Defendants argue that California's workers' compensation system preempts Escobedo's claim for IIED. (Mot. at 22–23.) The California state supreme court has been clear that "claims for intentional or negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law, notwithstanding the absence of any compensable physical disability." <u>Livitsanos v. Superior Ct.</u>, 828 P.2d 1195, 1197 (Cal. 1992). Escobedo attempts to defeat preemption by asserting that "the conduct here extends beyond routine supervision" and is based on FEHA violations. (Opp'n at 13.) The Court finds Escobedo's contention that his allegations underpinning this claim did not take place during the normal employment relationship to be intellectually dishonest at best. Every factual allegation occurred during Escobedo's employment with Godfrey Trucking and concerned his responsibilities, including whether he was meeting the job's expectations. (<u>See</u> <u>generally</u> Compl.) Therefore,

the Court **GRANTS** Defendants' Motion with respect to the Eleventh Claim and **DENIES LEAVE TO AMEND**.

### F. Claim Twelve: Waiting Time Penalties

Defendants argue Escobedo fails to state a claim for waiting time penalties, and to the extent they are based on allegations regarding meal and rest breaks, the claim should be dismissed without leave to amend. (Mot. at 24.) Escobedo states that Claim Twelve for waiting time penalties is based on Claims Nine and Ten. (See Opp'n at 14). Consequently, the waiting time penalties claim rises and falls with the meal and rest break claims. Because Claims Nine and Ten are dismissed, Escobedo's Twelfth Claim should follow suit. Further, Escobedo fails to state a claim for waiting time penalties because he conclusively states that "Defendants failed to pay plaintiff sums certain at the time of termination." (Compl. ¶ 105.) Escobedo's allegations are devoid of any description of what wages were withheld and thus are insufficient to state a claim. See Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d 1025, 1033 (C.D. Cal. 2017) (granting motion to dismiss where claim for failure to pay wages timely upon discharge contained "no description of what wages were due, when they were due, and when, if at all, they were paid"). Nonetheless, given Escobedo's assertion that Claim Twelve is based on meal and rest break violations, the Court **GRANTS** Defendants' Motion with respect to the Twelfth Claim and **DENIES LEAVE TO AMEND**.

### G. Claim Thirteen: UCL

Defendants argue Escobedo lacks standing to seek injunctive relief under the UCL. Indeed, the Ninth Circuit has repeatedly held that a "former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 864 (9th Cir. 2017); see also Walsh v. Nevada Dep't of Human Res., 471 F.3d 1033, 1036–37 (9th Cir. 2006) (concluding that a plaintiff requesting an injunction requiring her former employer to adopt and enforce lawful policies "lacked standing to sue for injunctive relief from which she would not likely benefit"). District courts have held similarly where, as here, the injunctive relief seeks the former employer's compliance with the California Labor Code. See, e.g., Perez v. Leprino Foods Co., No. 117CV00686-AWI-BAMx, 2018 WL 1426561, at *6 (E.D. Cal. Mar. 22, 2018) (dismissing demand for injunctive relief because "[i]t is well-settled that former employees lack standing to seek injunctive relief to ensure their former employer's compliance with the California Labor Code") (internal quotation omitted). Moreover, even if Escobedo seeks only restitution under the UCL, he fails to allege an adequate remedy at law. See Sonner v. Premium Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020) (affirming a district court's dismissal of plaintiff's UCL claim where she failed to establish she lacked an adequate remedy at law). Even if Escobedo attempted to make such a showing, the Court is skeptical that it survives dismissal, given that his UCL claim is derivative of his claims under California labor law. Smith v. United Seating and Mobility L.L.C., No. 8:24-CV-00747-FWS-DFM, 2024 WL 4441082, at *5 (C.D. Cal. Sept. 11, 2024) ("Plaintiff does not sufficiently allege the lack of an adequate remedy at law because the [claim] is 'derivative' of Labor Code

claims and rely on the same underlying factual allegations[.]").  Therefore, the Court **GRANTS** Defendants' Motion with respect to the Thirteenth Claim and **DENIES LEAVE TO AMEND**.

## H.  Claim Fourteen: Overtime Violation

Defendants argue Escobedo fails to allege sufficient facts to state a claim for failure to pay overtime wages under Landers v. Quality Communications, Inc., 771 F.3d 638 (9th Cir. 2014), as amended (Jan. 26, 2015)[1].  (Mot. at 22–23.)  In Landers, the Ninth Circuit reasoned that the plaintiff failed to state a claim because his allegations lacked "any detail regarding a given workweek when [he] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages."  Id. at 646.

Here, instead of providing factual allegations regarding violations of overtime pay, Escobedo conclusively states "[a]s a pattern and practice, Defendant suffered and forced Plaintiff to work in excess of eight hours in a workday and/or over 40 hours in a workweek without overtime pay. Defendants had a uniform corporate pattern and practice and procedure regarding the above practices in violation of Labor Code§§ 510 and 1194."  (Compl. ¶ 117.)  The Court cannot accept these allegations as true because they are nothing more than conclusions "cast in the form of a factual allegation."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Similar to the plaintiff in Landers, Escobedo "present[s] generalized allegations asserting violations of the . . . overtime provisions . . . . [and] fail[s] to provide 'sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week.'"  771 F.3d at 646 (quoting Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 201 (2d Cir. 2013)).  Therefore, the Court **GRANTS** Defendants' Motion with respect to Claim Fourteen and **DENIES LEAVE TO AMEND**.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion.  Escobedo shall file an amended complaint by May 15, 2026.  Escobedo is further instructed to include as an exhibit a redlined version of the amended complaint reflecting all changes made.  Failure to comply with this order could result in sanctions, including dismissal of the complaint with prejudice.

**IT IS SO ORDERED.**

---

[1] Although Landers was a FLSA case, lower courts have determined that Landers' reasoning also applies to violations of California's minimum wage and overtime laws.  Haralson v. United Airlines, Inc., 224 F. Supp. 3d 928, 942 (N.D. Cal. 2016); Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016).